# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-022

Filing Date: December 23, 2019

No. A-1-CA-36059

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOHN R. GONZALES,

      Defendant-Appellant.

## APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY
Pedro G. Rael, District Judge

Released for Publication May 5, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**MEDINA, Judge**

**{1}** Defendant John Gonzales appeals his convictions for resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(D) (1981); aggravated driving while under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(D)(1) (2010, amended 2016); careless driving, contrary to NMSA 1978, Section 66-8-113 (1987);  and possession of an open container, contrary to NMSA 1978, Section 66-8-138 (2013). Defendant raises two issues on appeal: (1)

the denial of his motion for a mistrial after the State questioned him about plea negotiations in front of the jury and (2) he was the subject of a pretextual stop. We reverse and remand for a new trial.

**BACKGROUND**

**{2}** The testimony at trial revealed the following facts. A husband and wife were driving home one afternoon when they saw an unfamiliar car driven by Defendant pull in and out of their driveway. As Defendant pulled out, he almost struck the couple's vehicle and fence before driving away. The couple followed Defendant and saw him pull in and out of another driveway. As Defendant drove away, the couple had to swerve in order to avoid being struck by him, causing a nearby truck to drive onto a railroad tie. A few minutes later, Defendant returned and pulled back into the same driveway from which he had just pulled out, at which point Officer Caleb Martin arrived in response to a report of a reckless driver.

**{3}** When Officer Martin made contact with Defendant, who was still sitting in the vehicle, he immediately smelled a strong odor of alcohol emanating from Defendant and noticed Defendant had bloodshot, watery eyes. Once Defendant opened the door, he almost fell out of the vehicle. Officer Martin eventually placed Defendant under arrest for DWI. Additionally, when Officer Martin reached in to turn off the ignition and secure Defendant's vehicle, he noticed a nearly empty pint of whiskey on the passenger seat. Officer Martin drove Defendant to the police station, and as he was escorting Defendant inside, Defendant pulled away, resulting in Officer Martin pinning him against the wall. Inside the station, Officer Martin asked Defendant if he would submit to a breath or blood test and interpreted Defendant's lack of response as a refusal.

**{4}** Defendant testified in his defense. On direct examination, Defendant testified that he stopped at a store on his way home and purchased a bottle of whiskey. Once home, Defendant entered his house, retrieved a soda with a cup of ice and returned to his vehicle, where he sat and listened to music until Officer Martin arrived. Defendant denied that he almost fell down or that he resisted arrest, and further testified that he offered to provide a breath, blood, or urine sample.

**{5}** During the State's cross examination of Defendant, the following colloquy took place:

> Q.  Mr. Gonzales, you realize certain things can happen in this case, right, if you get convicted, you are looking at jail time, right?[1]
>
> A.  Yes, if I did something wrong but I never did anything wrong. You have to break the law before you can get[—]
>
> Q.  Yeah.

---

[1]Although defense counsel did not object, we note that this question was improper, as jurors in criminal cases are expressly admonished not to consider the consequences of their verdict. *See* UJI 14-6007 NMRA.

> A. I haven't broke any laws. I can't see where he got me on reckless driving when I never drove my car in the manner of under the influence. . . . If I would have done wrong, I would have accepted the guilty plea like in the past. But how can you plea to something you didn't do[?] I don't think you would do that. I'm sorry but if you do nothing wrong, how can you plea to that? How can you accept that? You have to do something wrong before you—

The district court interjected, "There is no question pending, Mr. Gonzales. Wait until there is a question, okay." The cross examination continued:

> Q. Mr. Gonzales, you just made a statement that you would never plea to something like this?
>
> A. Would you please repeat the question?
>
> Q. You would never plea to something that you didn't do, right?
>
> A. Well you can't.
>
> Q. Isn't it true that this morning you wanted to plea this case out?

Immediately following the State's question, defense counsel objected, stating, "That is clearly inadmissible," and moved for a mistrial. In response, the State argued that Defendant "opened the door[.]"After a brief bench conference, the district court sustained defense counsel's objection but denied her motion for a mistrial and instructed the jury "to disregard the last statements of the witness about any possible negotiations that may have occurred in this case[.]"

**{6}** At the conclusion of trial, Defendant was found guilty of: (1) resisting, evading, or obstructing an officer; (2) aggravated DWI; (3) careless driving; and (4) possession of an open container. This appeal followed.

## DISCUSSION

## I. Evidence of Defendant's Plea Attempt Was Not Admissible

## A. Standard of Review

**{7}** We review the denial of a motion for a mistrial for an abuse of discretion. *State v. Hernandez*, 2017-NMCA-020, ¶ 14, 388 P.3d 1016. "The district court abuses its discretion in ruling on a motion for mistrial if it acts in an obviously erroneous, arbitrary, or unwarranted manner, or when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citation omitted). In determining whether the district court abused its discretion in denying Defendant's motion for a mistrial, we must address whether the State's question about

plea negotiations violated Rule 11-410 NMRA, and if so, whether it could be cured by the district court's admonition. *See Hernandez*, 2017-NMCA-020, ¶ 14. We begin by turning to the rule generally prohibiting the introduction of plea negotiations at trial and the policy supporting that prohibition.

## B.    Rule 11-410 and Supporting Policy

**{8}**    Under Rule 11-410(A)(5), evidence of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or resulted in a later-withdrawn guilty plea" are not admissible "against the defendant who made the plea or participated in plea discussions[.]"[2] Rule 11-410 also applies to evidence of the offer itself. *See State v. Smile*, 2009-NMCA-064, ¶ 41, 146 N.M. 525, 212 P.3d 413 (observing that "Rule 11-410 applies to . . . evidence of an offer to plead guilty and statements made in connection with the offer"). "The only exceptions provided by Rule 11-410 are where another statement made during the same plea or plea discussions has been introduced, if in fairness both statements ought to be considered together and in a criminal proceeding for perjury or false statement." *Kipnis v. Jusbasche*, 2017-NMSC-006, ¶ 1, 388 P.3d 654 (internal quotation marks and citation omitted); *see* Rule 11-410(B)(1). The State does not argue that either of the listed exceptions apply in the instant case.

**{9}**    There are important policy considerations for Rule 11-410's general prohibition against the admission of evidence relating to plea negotiations. "Like the federal counterpart rule from which the [state] rule was taken, the rule is meant to promote the efficient disposition of criminal cases because collateral use of pleas, as admissions of party-opponents under Rule 11-801 NMRA or as other evidentiary implications of guilt, would discourage resolution of criminal proceedings." *Kipnis*, 2017-NMSC-006, ¶ 1. "Rule [11-]410 embodies the public interest in encouraging negotiations concerning pleas between the criminal defendant and the [s]tate. Guilty pleas are an essential part of our criminal justice system, and candor in plea discussions aids greatly in the reaching of agreements between the defendant and the [s]tate." *State v. Trujillo*, 1980-NMSC-004, ¶ 18, 93 N.M. 724, 605 P.2d 232.

**{10}**    Our Supreme Court expounded upon the importance of the role of plea bargaining in *Trujillo* by acknowledging:

> The negotiated guilty plea serves important functions. The quality of justice in all cases would suffer if overloaded courts were faced with a great increase in the number of trials. Tremendous investments of time,

---

2We note that Rule 5-304(F) NMRA also provides:

> Evidence of a plea of guilty, later withdrawn, a plea of no contest, or of an offer to plead guilty or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

However, as Defendant does not cite Rule 5-304(F) and relies solely on Rule 11-410 for his argument, our discussion is limited to the latter rule.

talent, and money, all of which are in short supply and can be better used elsewhere, would be necessary if all cases were tried.

*Id.* (omission, internal quotation marks, and citation omitted). In light of these important policy considerations, the Court in *Trujillo* determined that "Rule 11-410 'clos[ed] the door on the admissibility of [statements surrounding plea negotiations] as evidence at trial for either substantive or impeachment purposes' and that 'a weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the cloak of privilege around plea negotiation discussions.' " *Kipnis*, 2017-NMSC-006, ¶ 14 (first and second alterations in original) (quoting *Trujillo*, 1980-NMSC-004, ¶¶ 19, 21). Our Supreme Court has also indicated that Rule 11-410 acts as a categorical rule of exclusion, noting that, unlike surrounding evidentiary rules, Rule 11-410 "contains no language which limits its exclusionary effect." *Kipnis*, 2017-NMSC-006, ¶ 13 (quoting *Trujillo*, 1980-NMSC-004, ¶ 17). *Compare* Rule 11-410, *with* Rule 11-409 NMRA (providing that evidence of offers to pay medical expenses "is not admissible *to prove liability for the injury*" (emphasis added)), *and* Rule 11-411 NMRA (providing that evidence of a person's liability insurance, or lack thereof, "is not admissible *to prove that the person acted negligently or otherwise wrongfully*" (emphasis added)). Moreover, in doing so, our Supreme Court has paid more than passing tribute to the interpretation of Federal Rule of Evidence 410 and the idea that the federal counterpart "contains no hint that its categorical rule of exclusion has anything to do with the purpose for which the evidence is offered." *Kipnis*, 2017-NMSC-006, ¶ 13 (quoting Glen Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 410.3 at 214 (7th ed. 2011)). With these considerations in mind, we now turn to an analysis of the State's questioning of Defendant.

## C. Rule 11-410 Bars Admission of Evidence of Defendant's Plea Attempt

**{11}** Despite Rule 11-410's broad protection, the State contends that under the doctrine of curative admissibility, the State's question—"Isn't it true that this morning you wanted to plea this case out?"—was proper since Defendant "raised the issue of pleading guilty in a way that misrepresented what occurred[.]" Specifically, the State contends that Defendant "opened the door" by "us[ing] the lack of a plea as evidence to support his claim that he did not drive while intoxicated." We disagree.

**{12}** Curative admissibility is a common law evidentiary doctrine that is still recognized by our courts, despite its lack of codification in our rules of evidence. *See State v. Baca*, 1995-NMSC-045, ¶ 23 n.2, 120 N.M. 383, 902 P.2d 65 (recognizing that New Mexico adopted the doctrine of curative admissibility); see also *United States v. Bolin*, 514 F.2d 554, 558 (7th Cir. 1975) (stating that "[t]he doctrine of curative admissibility . . . is well established in the common law of evidence"). Under the doctrine of curative admissibility, a party may introduce inadmissible evidence to counteract the prejudice created by their opponent's earlier introduction of similarly inadmissible evidence. *State v. Comitz*, 2019-NMSC-011, ¶ 47, 443 P.3d 1130 ("[W]hen a defendant gives testimony that 'opens the door' to inadmissible evidence, the doctrine of curative admissibility in some circumstances may permit the [s]tate to rebut that claim with otherwise

inadmissible evidence." (internal quotation marks and citation omitted)); *State v. Ruiz*, 2001-NMCA-097, ¶ 47, 131 N.M. 241, 34 P.3d 630 ("Our precedents permit otherwise inadmissible evidence to be used to rebut the same under the doctrine of curative admissibility."); *Leday v. State*, 983 S.W.2d 713, 716 (Tex. Crim. App. 1998) (en banc) ("In the common law of evidence, the doctrine of curative admissibility allows one party to introduce evidence that might otherwise be excluded, to counter the unfair prejudicial use of the same evidence by the opposing party."). Thus, a party cannot invoke curative admissibility to correct an admissible statement.[3] *See* Francis A. Gilligan & Edward J. Imwinkelried, *Bringing the "Opening the Door" Theory to a  Close: The Tendency to Overlook the Specific Contradiction Doctrine in Evidence Law*, 41 Santa Clara L. Rev. 807, 809 (2001) ("Curative admissibility is triggered only when the opponent first breaches an evidentiary rule by introducing *inadmissible* evidence." (emphasis added)); *see also State v. Fukusaku*, 946 P.2d 32, 67 (Haw. 1997) (declining to apply the doctrine of curative admissibility because defense counsel "introduced *admissible* evidence, not *inadmissible* evidence"); Frederick C. Moss, *The Sweeping-Claims Exception and the Federal Rules of Evidence*, 1982 Duke L.J. 61, 76 (1982) ("The doctrine of curative admissibility should be limited, at least conceptually, to cases . . . in which the admission of rebuttal evidence is justified to counteract prejudicial *inadmissible* evidence introduced by the other side." (emphasis added)); Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 869 (1995) (noting that "[c]urative admissibility applies only when the original evidence is properly *inadmissible* upon objection").

**{13}**    Because the doctrine is based on, and limited by, the interest of fairness, the district court has discretion to deny a party's request to invoke curative admissibility, especially when the court concludes a curative instruction would be effective in ameliorating the prejudice created by the inadmissible evidence. *See Perkins v. United States*, 760 A.2d 604, 610 (D.C. 2000) ("Under the doctrine of curative admissibility, the introduction of incompetent or irrelevant evidence by a party opens the door to the admission of otherwise inadmissible evidence only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence. The doctrine is based upon, and limited by, the necessity of removing prejudice in the interest of fairness." (internal quotation marks and citations omitted)); *State v. Dunlap*, 2002 WI 19, ¶ 14, 250 Wis. 2d 466, 640 N.W.2d 112 ("[T]he court may allow the opposing party to introduce otherwise inadmissible evidence [through curative admissibility] if it is required by the concept of fundamental fairness to prevent unfair prejudice."); Gilligan & Imwinkelried, *supra*, at 829 (noting that "if the judge concludes that the jury could have complied with the [curative] instruction, that conclusion cuts strongly against applying curative admissibility"); *id.* at 833 (noting that "courts typically describe the doctrine [of curative admissibility] as a conferral of discretion on the trial judge rather than the grant of a right to the party").

---

[3]We note, however, that parties may generally impeach misleading evidence introduced by their opponents through specific contradiction. *See generally* Gilligan & Imwinkelried, *supra* (discussing the differences between curative admissibility and specific contradiction).

**{14}** Here, the parties do not address the admissibility of Defendant's initial statements about plea negotiations. We question, but do not decide, whether those statements were inadmissible, as the plain language of Rule 11-410 only prohibits evidence of plea negotiations from being used *against* the defendant. *See* Gilligan & Imwinkelried, *supra*, at 824 ("Although a party may contend that an opponent's evidence is false or misleading, even false or potentially misleading evidence can satisfy the rules governing the admissibility of evidence.").

**{15}** However, regardless of whether Defendant's initial testimony was inadmissible—thus triggering the availability of curative admissibility—or not, Rule 11-410 bars the State from introducing evidence of Defendant's plea attempt. Although Defendant's testimony might have misled the jury into believing he did not plead guilty, we do not conclude it created such unfair prejudice that would justify the introduction of Defendant's plea attempt through curative admissibility. *Trujillo* makes clear that, given the importance of plea negotiations in the criminal process, Rule 11-410 "clos[es] the door" on the admissibility of evidence of plea negotiations. *Trujillo*, 1980-NMSC-004, ¶¶ 19-20. Indeed, our Supreme Court anticipated that "some persons may be tempted to testify inconsistently with what they stated previously during plea discussions with the [s]tate." *Id.* ¶ 21. While the Court did not condone such action, it determined that "a weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the *cloak of privilege* around plea negotiation discussions." *Trujillo*, 1980-NMSC-004, ¶ 21 (emphasis added). Similarly, weighing the need to protect and encourage plea negotiations against the State's need to correct the possible prejudice created by Defendant's testimony, we conclude that the State was not so prejudiced as to overcome Rule 11-410's prohibition through curative admissibility.

**{16}** In advancing its argument that Defendant "opened the door" to discussing his attempt to plea through curative admissibility, the State relies on cases where we have applied the doctrine to propensity evidence. *See, e.g.*, *State v. Hernandez*, 1999-NMCA-105, ¶¶ 19-20, 127 N.M. 769, 987 P.2d 1156 (concluding that the defendant "opened the door" to the prosecutor's questions about prior domestic violence where the defendant testified that the victim would hit herself when she was mad at the defendant); *State v. Andrade*, 1998-NMCA-031, ¶ 21, 124 N.M. 690, 954 P.2d 755 (holding that "[the d]efendant opened the door regarding prior violent episodes between [the d]efendant and [the v]ictim," making the prosecutor's questions of "who really beat whom" proper through curative admissibility). However, there are significant differences in the way that the rule prohibiting propensity evidence (i.e., Rule 11-404 NMRA) and Rule 11-410 operate that raise concerns about extending our holding in those cases to the case at hand. Specifically, our Supreme Court has noted that Rule 11-410 is limited in its exceptions, and that the intended purpose of the evidence does not have bearing on admissibility. *Kipnis*, 2017-NMSC-006, ¶ 13. Rule 11-404, on the other hand, contains numerous exceptions based on the purpose for which the evidence is introduced. Given these differences, and given the clear import of *Trujillo* prohibiting evidence of plea negotiations despite any misrepresentations by defendants, *see* 1980-NMSC-004, ¶ 19, we conclude that Defendant's misrepresentation cannot provide the basis for admission of evidence of his plea negotiation. Therefore, it was error for the

State to bring up Defendant's attempt to plead guilty. We continue our analysis, however, to determine whether the curative jury instruction remedied the error.

## D.    Curative Instructions and Harmless Error

**{17}**    "The overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." *State v. Simonson*, 1983-NMSC-075, ¶ 21, 100 N.M. 297, 669 P.2d 1092. However, "one of the exceptions to this general rule arises when inadmissible testimony is intentionally elicited by the prosecution." *Hernandez*, 2017-NMCA-020, ¶ 17 (alteration, internal quotation marks, and citations omitted). When this occurs, "the general rule does not apply regardless of whether the district court admonishes the jury to disregard the inadmissible testimony[,]" and instead this Court must determine if harmless error occurred. *Id.* ¶¶ 17, 20.

**{18}**    Generally, issues of whether inadmissible testimony was intentionally elicited arise when the prosecutor asks a witness a question, and the ensuing testimony is inadmissible. *See, e.g.*, *State v. Armijo*, 2014-NMCA-013, ¶ 12, 316 P.3d 902 (concluding that the state intentionally elicited inadmissible testimony where the state made no attempt to justify questions seeking the officer's unqualified opinion and the court could not identify a proper purpose for the prosecutor's questions); *State v. Ruiz*, 2003-NMCA-069, ¶¶ 8-9, 133 N.M. 717, 68 P.3d 957 (holding that the state intentionally elicited inadmissible testimony where the prosecutor "directly asked the witness to say what he should have known, and what the witness seemed to know, was forbidden"). The analysis of intentionality is straightforward in this case because it is the State's question, and not resulting witness testimony, that contained the inadmissible reference to Defendant's plea negotiations. Regardless of any argument by the State regarding whether Defendant "opened the door," the State's question to Defendant asking him to affirm his earlier desire to plead was an intentional reference to Defendant's plea negotiation. As a result, we cannot conclude that the district court's curative instruction cured the prejudicial effect of the State's question, and we continue our analysis to determine if the error was harmless. *See Hernandez*, 2017-NMCA-020, ¶¶ 17, 20.

**{19}**    Generally, violations of the rules of evidence are considered to be non-constitutional error, which is harmless "when there is no reasonable *probability* the error affected the verdict." *State v. Duran*, 2015-NMCA-015, ¶ 19, 343 P.3d 207 (internal quotation marks and citation omitted). However, given the constitutional rights that an erroneous admission of Defendant's attempt to plead guilty could touch upon, we consider the error to be of the constitutional variety, which is harmless "only if we conclude that there is no reasonable *possibility* the error contributed to the jury's decision to convict Defendant." *State v. Tollardo*, 2012-NMSC-008, ¶ 45, 275 P.3d 110 (emphasis added); *see Smile*, 2009-NMCA-064, ¶ 46 (applying a constitutional harmless error test because the improper admission of plea negotiation evidence "could touch upon various constitutional rights"). "[T]here are no scientific answers to the ultimate question of whether the trier of fact was influenced by an error[.]" *Tollardo*, 2012-NMSC-008, ¶ 43 (internal quotation marks and citation omitted). Nonetheless,

reviewing courts must endeavor to determine the likely effect of the error on the jury's verdict. *Id.* In conducting our review, we analyze the error on a case-by-case basis, "evaluat[ing] all of the circumstances surrounding the error, including examining the error itself, the source of the error, the emphasis on the error, and whether the error was cumulative or introduced new facts." *Hernandez*, 2017-NMCA-020, ¶ 20. Additionally, "evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings; but such evidence . . . can never be the singular focus of the harmless error analysis." *Tollardo*, 2012-NMSC-008, ¶ 43.

**{20}** Evaluating all of the circumstances surrounding the error, we cannot conclude the error was harmless. First, the error was not cumulative and introduced new facts. While Defendant was the first to mention pleas by stating he would have accepted a guilty plea if he had done something wrong, it was the State that brought the discussion out of the abstract and revealed that Defendant tried to plead guilty that very morning. Revealing this fact immediately after Defendant asserted that he would have pleaded guilty if he had done something wrong undoubtedly had an impact on Defendant's innocence (or guilt) in the minds of the jury, as the State essentially used Defendant's testimony to equate his plea negotiation with an admission of guilt. *Cf. Hernandez*, 2017-NMCA-020, ¶ 21 (concluding that a reference to the defendant's purported confession was not harmless given the highly prejudicial nature of confessions on jurors). To put it another way, the State's revelation prompted the jury to consider: Defendant would have pleaded guilty if he did something wrong; he tried to plead guilty this morning; therefore, Defendant must have done something wrong. Although, as the State points out, defense counsel objected to the question before Defendant had the opportunity to answer it, the damage was already done: the jury had learned that Defendant attempted to plead guilty that morning, an act which, according to Defendant's own testimony was essentially an admission of guilt. Additionally, the State's reference to Defendant's plea attempt impeached his credibility—which was paramount to his defense, given his challenge of the other witnesses' version of events—by demonstrating that Defendant did something he testified he would not do (i.e., plead guilty to something he claimed he did not do). Furthermore, the error was emphasized before the jury during the back and forth between the State and defense counsel in which the State claimed that Defendant "opened the door," and defense counsel called the question "highly inadmissible" and moved for a mistrial.

**{21}** This Court has acknowledged that admission of evidence of a defendant's attempt to plead guilty "can be highly prejudicial because it is . . . difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time pleaded guilty to the commission of the crime with which he stands charged." *Smile*, 2009-NMCA-064, ¶ 43 (alterations, internal quotation marks, and citation omitted); *see also id.* ¶ 74 (Vigil, J., concurring in part, dissenting in part) ("[A]t trial [the d]efendant [is] entitled to every constitutional safeguard and presumption associated with a plea of 'not guilty.' Because of the nature of a guilty plea, . . . improperly admitting into evidence [the d]efendant's attempt to plead guilty destroy[s the

d]efendant's constitutional presumption of innocence."). While the district court admonished the jury to disregard "any possible negotiations that may have occurred," given the highly prejudicial nature of the State's disclosure under the circumstances of this case, we cannot conclude that there was "no reasonable possibility the error contributed to the jury's decision to convict Defendant." *Tollardo*, 2012-NMSC-008, ¶ 45. Accordingly, the district court abused its discretion in denying Defendant's motion for a mistrial.

## E.     Sufficient Evidence for Retrial

**{22}**    In light of our determination that the district court abused its discretion in not granting a mistrial, we now consider whether retrial is appropriate. Although Defendant does not challenge the sufficiency of the evidence underlying his convictions, in order to avoid potential double jeopardy concerns that may arise if Defendant is retried, we consider whether the State put forth sufficient evidence to convict Defendant of the charges and justify a second trial. *Hernandez*, 2017-NMCA-020, ¶ 30. "In reviewing the sufficiency of the evidence, this Court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted). Given that there was testimony at trial regarding: (1) Defendant's difficulties with stability and balance; (2) the  odor of alcohol emanating from his person, his bloodshot, watery eyes, and slurred speech; (3) Defendant's refusal to take a chemical test; (4) Defendant pulling away from the arresting officer while being escorted into the police station; (5) the bottle of alcohol in Defendant's front seat; and (6) Defendant's erratic driving, we conclude there was sufficient evidence to support Defendant's convictions for aggravated DWI; resisting, evading, or obstructing an officer; possession of an open container; and careless driving. *See State v. Soto*, 2007-NMCA-077, ¶ 34, 142 N.M. 32, 162 P.3d 187 (concluding there was sufficient evidence to support an aggravated DWI conviction where officers observed the defendant driving, the defendant had red, bloodshot, watery eyes and smelled of alcohol, officers found empty beer cans where the defendant admitted to have been drinking, and the defendant refused to take a chemical test), *overruled on other grounds by Tollardo*, 2012-NMSC-008; *see also* UJI 14-2215 NMRA (listing essential elements of resisting, evading, or obstructing an officer); § 66-8-138 (listing essential elements of possession of open container); UJI 14-4505 NMRA (listing essential elements of careless driving). Thus, Defendant's double jeopardy rights will not be affected by a retrial.

## II.     Defendant Failed to Adequately Preserve Whether His Stop Was Pretextual

**{23}**    Defendant additionally contends that "[t]he police used the stop, investigation, and arrest of [Defendant] as pretexts for [his] continued harassment." Defendant raises this argument pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer* 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, which require appellate counsel to advance his argument even if the merits of the argument are questionable. Defendant never raised this issue before the district court. Preservation is routinely required for claims of pretext. *See Schuster v. N.M. Dep't of Taxation &*

*Revenue*, 2012-NMSC-025, ¶¶ 32-33, 283 P.3d 288 (addressing whether the appellant preserved his pretext argument); *State v. Scharff*, 2012-NMCA-087, ¶ 19, 284 P.3d 447 (determining the defendant's pretext argument was insufficient where it was not adequately preserved below because no testimony was elicited indicating that the traffic stop was a result of pretext, the issue was not raised during the suppression hearing, and no ruling by the district court was invoked). In determining whether a stop was pretextual, the district court must "consider the totality of the circumstances, judge the credibility of witnesses, [and] weigh the evidence . . . [including] the objective reasonableness of an officer's actions and the subjective intent of the officer[.]" *State v. Ochoa*, 2009-NMCA-002, ¶ 39, 146 N.M. 32, 206 P.3d 143. Given this fact-dependent inquiry, which this Court is unable to make for the first time on appeal, we decline to address Defendant's pretext argument.

**CONCLUSION**

**{24}** For the foregoing reasons, we conclude that Rule 11-410 barred the State from questioning Defendant about his plea negotiations, and the district court abused its discretion in not granting a mistrial. We therefore reverse Defendant's convictions and remand for a new trial.

**{25} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**