This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40683**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**AHMAD RASHAD WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer J. Wernersbach, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Ahmad Williams appeals his convictions of two counts of aggravated battery on a peace officer, contrary to NMSA 1978, Section 30-22-25 (1971) and one count of battery on a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971). On appeal, Defendant advances four arguments related to the district court's admission and exclusion of evidence. Defendant contends that such evidentiary rulings were erroneous and justify reversal either individually or cumulatively. Because none of the

district court's evidentiary rulings, collectively or in isolation, amount to reversible error, we affirm.

## BACKGROUND

{2}     The general factual background underlying Defendant's convictions is undisputed. On December 31, 2019, emergency dispatchers received several phone calls regarding a potential domestic disturbance at the home of Eddie Williams, Defendant's brother. Upon arriving at the scene, police officers learned that Defendant may have been experiencing some sort of mental health episode, was potentially armed, and ultimately determined that Defendant needed to be placed under arrest to be removed from the scene. While Defendant was being transported to a police substation for further processing, one of the officers remained at Eddie Williams' residence, obtained permission to search the house, and recovered a firearm inside.

{3}     Once Defendant arrived at the substation, he was seated in a chair and shackled to a metal pole attached to the floor near where officers completed paperwork relevant to the arrest. Throughout the evening, officers twice attempted to move Defendant from this position, first into a holding cell and later to the Metropolitan Detention Center (MDC). During each of these interactions, Defendant became combative with officers and resisted their attempts to remove his handcuffs or otherwise touch him. When officers tried to move Defendant into a holding cell, Defendant attempted to head-butt one of them, prompting the officers to leave him in place for the time being. When the officers subsequently tried to unshackle Defendant so that he could be moved to MDC, he became combative and aggressive, biting two officers to the point of drawing blood and kicking a third. This conduct resulted in Defendant's convictions of two counts of aggravated battery on a peace officer (for biting) and one count of simple battery on a peace officer (for kicking), which he now appeals.

{4}     Defendant claims that, approximately thirteen minutes after the batteries occurred, his knee became dislocated due to police use of force. Although it is unclear exactly how the injury occurred, the police officers then took Defendant to the hospital to receive treatment. Defendant's knee apparently relocated itself before Defendant was seen by medical personnel, and he was returned to custody without treatment.

{5}     Three days before trial, the State dismissed all of the charges arising out of Defendant's conduct at the scene of arrest, and the case was presented to the jury regarding only the above named battery charges. Thus, much of the evidence regarding events occurring before Defendant arrived at the substation, including Defendant's state of mind at the scene, his allegedly violent behavior there, and the gun that was recovered, was excluded by the district court. Despite the district court's exclusion of this subject matter, defense counsel in its opening statement mentioned facts and circumstances relating to the scene of arrest, thereby "opening the door" to much of the previously inadmissible evidence. Defendant now challenges, in addition to other things, the admission of some of this curative evidence.

**Standard of Review**

**{6}** Evidentiary rulings are reviewed for an abuse of discretion. *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Even if an evidentiary error is found, however, reversal is only justified when the error was harmful. *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Mistakes made during trial that do not implicate constitutional rights, such as the wrongful admission of evidence, are harmless "when there is no reasonable *probability* the error affected the verdict." *Id.* ¶ 36 (internal quotation marks and citation omitted). "When assessing the probable effect of evidentiary error, courts should evaluate all of the circumstances surrounding the error." *State v. Serna*, 2013-NMSC-033, ¶ 23, 305 P.3d 936 (internal quotation marks and citation omitted). "This includes the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *Id.*

**Evidence of Defendant's Dislocated Knee**

**{7}** At trial, Defendant sought to testify about his alleged knee dislocation, arguing that the injury, although occurring at least thirteen minutes after the batteries, tended to prove that the officers were using excessive force against Defendant at the time the batteries occurred. Defendant's theory was that the police officers' allegedly excessive use of force after the batteries justified his claim of self-defense against such unnecessary force at the time of the batteries, thereby entitling him to claim he acted in self-defense. *See* UJI 14-5185 NMRA ("A defendant has the right to defend himself or herself against an officer only if the officer used excessive force."). The district court excluded evidence of the alleged injury, however, determining that such was irrelevant to self-defense which requires "an appearance of *immediate danger* of bodily harm to a defendant." *Id.* (emphasis added).

**{8}** Defendant argues this ruling was an abuse of discretion because the dislocation substantiated his claim of self-defense against excessive force. We are not persuaded. Even if we were to accept the premise that Defendant's knee was, in fact, dislocated by police conduct, the injury would have occurred thirteen minutes after Defendant committed the batteries in question. The district court correctly reasoned that the jury instruction for self-defense against excessive use of force given at trial requires "an appearance of *immediate danger* of bodily harm" and that the "defendant [must be] in fact put in fear" of such harm. *Id.* (emphasis added). Moreover, regarding self-defense generally, it is well settled that a defendant's fear of immediate danger is measured at the time of the incident, not at other points in time. *See State v. Rudolfo*, 2008-NMSC-036, ¶¶ 17-18, 144 N.M. 305, 187 P.3d 170 (explaining that self-defense requires "the

appearance of immediate danger and actual fear" and that the "focus [is] on the perception of the defendant at the time of the incident").

**{9}** The district court also admitted into evidence four different videos, each presenting varying camera angles and collectively presented to the jury, that show the moments immediately before, during, and after the batteries at issue. From these videos, the jury could plainly determine for itself whether the officers used excessive force and whether Defendant was in fear of the officer's use of force at the time he kicked and bit them. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. For these reasons, we cannot say the district court's order precluding Defendant from testifying about his knee injury was contrary to logic or unjustified by reason and, therefore, conclude that such order was not an abuse of discretion.

**Testimony About Defendant's Mental Health**

**{10}** Defendant next contends that the district court erred in preventing him from testifying that he suffers from schizophrenia and naming the medications he takes for the disorder. In its ruling, the district court barred Defendant from naming the specific condition from which he suffers—or otherwise indicating that he has received a diagnosis regarding mental health in the past—and that Defendant could not name the specific medications he is taking for his mental health issues. The district reasoned that any diagnosis Defendant received was ultimately based on hearsay in that it originated from a medical professional and that Defendant had not offered any evidence, other than his proffered testimony, that he had been diagnosed with a mental health condition. The court, however, did permit Defendant to tell the jury about the symptoms he experienced related to his mental health issue, including any delusions, paranoia, or erratic behavior, as well as the effects of his medications on those symptoms and whether he was medicated at the time of the batteries in question.

**{11}** Defendant argues that the district court's ruling was an abuse of discretion and he should have been allowed to tell the jury the name of his diagnosis and medications because those are facts within his personal knowledge and not a matter of hearsay. Even if we were to assume without deciding that the district court erred in excluding this testimony, however, we conclude such error to be harmless because there is no reasonable probability it affected the verdict. *See Tollardo*, 2012-NMSC-008, ¶ 36 ("[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." (internal quotation marks and citation omitted)).

**{12}** As stated above, the jury in this case was shown four different camera angles of the officers' conduct before and during the batteries. The jurors also heard Defendant testify about his personal history associated with his mental health, his related symptoms, whether he was experiencing symptoms at the time, and what effects his medication had on those symptoms. Thus, Defendant was deprived only of personally testifying that he has been diagnosed with schizophrenia and providing the names of his

medication. Considered collectively, Defendant's testimony about his mental health symptoms on the night in question, his personal history with those symptoms, and the effects of his medication on his behavior were clearly presented to the jury. This testimony was sufficient to convey to the jury the information he now challenges as erroneously excluded: that he suffers from a mental health disorder and was experiencing a crisis related to that affliction when he interacted with the police. Given the fact that Defendant offered no expert testimony regarding his mental condition, or any other evidence about the nature of schizophrenia and its psychological or behavioral effects, we cannot conclude that the district court's limitation of his testimony reasonably affected the jury's verdict.

**Evidence That a Gun Was Found Where Defendant Was Arrested**

**{13}** Defendant next contends that the district court abused its discretion in admitting evidence of a gun found at the scene of Defendant's arrest. He argues that the gun was irrelevant to the charges against him and overly prejudicial because it made him look "particularly dangerous and unhinged." While the district court initially excluded virtually all evidence relating to Defendant's arrest, including the gun, defense counsel rendered such evidence admissible by referencing prearrest evidence in its opening statement. In allowing evidence that a gun was collected from the scene, the district court reasoned that defense counsel's opening statement put into question the state of mind of the officers as well as Defendant, the conduct of the officers at the original scene, and the fact that Defendant was in a potentially violent dispute with family members. The court concluded that evidence of the gun was relevant to the officers' conduct at the scene and later at the substation because they were aware Defendant may have been violent and was previously potentially armed.

**{14}** While Defendant acknowledges that defense counsel commented on inadmissible evidence in its opening statement, he argues that evidence of the gun was still irrelevant to the charges of battery and highly prejudicial to his case. Although we agree with Defendant that evidence of a gun found after he was arrested does not bear on the battery charges which he faced, a fact supported by the district court's initial exclusion of such evidence, we cannot conclude that the district court erred in admitting evidence of the gun to cure the harm done by defense counsel's opening statement. "Under the doctrine of curative admissibility, a party may introduce inadmissible evidence to counteract the prejudice created by their opponent's earlier introduction of similarly inadmissible evidence." *State v. Gonzales*, 2020-NMCA-022, ¶ 12, 461 P.3d 920; *see State v. Comitz*, 2019-NMSC-011, ¶ 47, 443 P.3d 1130 ("[W]hen a defendant gives testimony that opens the door to inadmissible evidence, the doctrine of curative admissibility in some circumstances may permit the [s]tate to rebut that claim with otherwise inadmissible evidence." (internal quotation marks and citation omitted)).

**{15}** In its opening statement, defense counsel repeatedly commented on Defendant's compliant demeanor with officers prior to his arrest in an effort to establish that his later, combative behavior was a response to excessive use of force. "The doctrine [of curative admissibility] is based upon, and limited by, the necessity of removing prejudice in the

interest of fairness." *Gonzales*, 2020-NMCA-022, ¶ 13 (internal quotation marks and citation omitted). Here, the district court was forced to strike a balance between unduly prejudicing Defendant with inadmissible and irrelevant evidence and allowing the State to rebut defense counsel's claims regarding the state of mind of both Defendant and the officers at the scene of arrest. In so doing, the district court ruled that, despite defense counsel's opening, statements made to officers that Defendant possessed a gun at the scene of arrest were still inadmissible because they did not bear on the officers' state of mind. It continued, however, that if an officer personally observed a gun at the scene, that officer could testify to their observations.

**{16}** We review a district court's evidentiary rulings, including those regarding admission of curative evidence, for an abuse of discretion. *See Comitz*, 2019-NMSC-011, ¶¶ 45-46. To reiterate, "[a]n abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* ¶ 46 (internal quotation marks and citation omitted). "The very essence of discretion is that there will be reasons for the district court to rule either way on an issue, and whatever way the district court rules will not be an abuse of discretion." *State v. Branch*, 2018-NMCA-031, ¶ 46, 417 P.3d 1141 (internal quotation marks and citations omitted). Here, we cannot say that the district court's ruling was unjustified by reason or clearly against the circumstances of the case. Defense counsel referenced evidence that was clearly ruled inadmissible by the district court, and the court admitted only that evidence necessary to cure such reference.

**The State's Rebuttal Witness**

**{17}** Defendant lastly challenges the district court's decision to allow the State to recall a witness, Officer Martinez, in rebuttal to Defendant's case in chief. Defendant argues that Officer Martinez offered no new information during his rebuttal testimony and that the allegedly duplicative statements were prejudicial. Defendant specifically challenges Officer Martinez's rebuttal testimony regarding whether he had kneeled on Defendant's groin around the time Defendant bit and kicked the officers.

**{18}** During the State's case in chief, the prosecutor asked Officer Martinez if he had kneeled on Defendant's groin or if he observed any other officer do the same. Officer Martinez answered "no" to both questions. On cross-examination, defense counsel asked Officer Martinez, while referencing a lapel video that was admitted into evidence, whether another officer's knee appeared to be near Defendant's groin. Later, during Defendant's direct examination, again referencing the same lapel video, Defendant testified that Officer Martinez had kneeled directly on his groin. After the defense rested, the State requested to recall Officer Martinez to clarify some of his testimony. The district court specifically asked the State whether Officer Martinez was being recalled to testify regarding a new matter he had not previously spoken about or if he was merely to reiterate testimony already in evidence. The State responded that, while Officer Martinez was previously asked whether he had kneeled on Defendant's groin, it now wanted him to say whether his knee was completely down on the ground or on Defendant's groin. The court ruled the State could recall Officer Martinez to discuss the

particular moment his knee appeared over Defendant in the previously used lapel video to clarify "exactly [Officer Martinez's] act in that moment." During rebuttal, the State asked Officer Martinez, while referencing the same video shown during his direct examination, where he was standing in relation to Defendant, why, and whether he was kneeling on Defendant's groin or otherwise applying pressure to that area of Defendant's body.

**{19}** Defendant asserts that Officer Martinez's rebuttal testimony unduly prejudiced his defense and the court abused its discretion in admitting it. We are not persuaded. Even if we assume without deciding that the district court did err, Defendant was not unduly prejudiced by his testimony. "Rarely does allowing a rebuttal witness to testify rise to reversible error." *State v. Perez*, 2014-NMCA-023, ¶ 14, 318 P.3d 195. "Even if the district court determines that the party calling the rebuttal witness reasonably might have anticipated calling the witness . . . absent a strong showing of prejudice we see no error in allowing the witness to testify." *Id.* (internal quotation marks and citation omitted). Defendant argues that the rebuttal testimony was prejudicial because it was cumulative to what had already been presented and it bore directly on how much force was being used against Defendant at the time of the batteries—a principal issue in the case. While Officer Martinez's rebuttal testimony may have been repetitive of statements previously made, we remain unpersuaded that Defendant was unduly prejudiced by it. At worst, the State obtained an opportunity to briefly present and clarify information already presented. Officer Martinez merely elaborated slightly on the position his knee was in, why it was there, and reiterated that he did not kneel on Defendant's groin. All told, the State's rebuttal questioning of Officer Martinez took approximately four minutes and was limited to the above information, most of which was already before the jury. We therefore conclude that, even assuming Officer Martinez's rebuttal testimony was erroneously cumulative, Defendant was not unduly prejudiced by such testimony and any error was therefore harmless. *See Tollardo*, 2012-NMSC-008, ¶ 36 ("[N]on-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." (internal quotation marks and citation omitted).

**Cumulative Error**

**{20}** Defendant asserts that the above alleged mistakes amount to cumulative error such that he was deprived of a fair trial and his convictions, therefore, warrant reversal. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6.

**{21}** Viewing the record as a whole, it is clear Defendant received a fair trial. As we have stated, two out of the four evidentiary rulings challenged by Defendant were not error. Even assuming, as we have, that the remaining two rulings were erroneous, they were too slight to have the cumulative effect of denying Defendant a fair trial, which is the lynchpin of our cumulative error analysis. *See State v. Allen*, 2000-NMSC-002, ¶ 95,

128 N.M. 482, 994 P.2d 728 ("Judges have wide discretion in controlling the proceedings before them and a defendant is not entitled to a perfect trial." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{22}** We affirm.

**{23}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**