The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 17, 2022</u>

**No. A-1-CA-39709**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTONIO M.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Grace B. Duran, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

**OPINION**

**HENDERSON, Judge.**

{1}     Following an adjudicatory hearing, a jury found Antonio M. (Child or A.M.) committed felony murder, attempt to commit armed robbery, conspiracy to commit armed robbery, child abuse, and aggravated assault by the use of a deadly weapon. On appeal, Child argues (1) the State failed to bring him to an adjudicatory hearing in a timely manner; (2) the witness identifications of Child during the adjudicatory hearing were unnecessarily suggestive; (3) the district court abused its discretion by admitting evidence regarding "rumors" that Child and two others planned to rob Fabian Lopez (Victim); (4) the State failed to present sufficient evidence to sustain Child's delinquency adjudications; and (5) the cumulative impact of these errors warrant the reversal of his delinquency adjudications.

{2}     We hold that the delays before the adjudicatory hearing did not require the district court to dismiss the petition and do not require this Court to vacate Child's delinquency adjudications. Nevertheless, because we conclude that the in-court identifications were impermissively suggestive, we reverse and remand for a new adjudicatory hearing. We address Child's remaining arguments to the extent necessary to avoid error in retrial and to ensure that retrial does not violate double jeopardy protections.

**BACKGROUND**

**I.      Factual Background**

2

{3}     On the night of August 4, 2020, Victim drove with his girlfriend (Girlfriend) and their infant son to Frenger Park in Las Cruces, New Mexico. Victim parked his vehicle at Frenger Park, and not long after, a young man walked up to the driver's side of the car and asked Victim if he could get in. After getting into the front passenger seat of Victim's car, the young man, later identified as M.M., was heard counting and apologizing to Victim. M.M. then stepped out of the vehicle, took out a gun, and pointed it at Victim, telling him, "Give me what you got." Victim held his hands up and responded to M.M., "I don't have anything. You already have whatever you wanted." While pointing a gun at Victim, two other young males walked up to the driver's side of the vehicle and also pointed guns at Victim. M.M. shot and killed Victim as he sat in the driver's seat with his hands up.

{4}     The medical investigator determined that Victim died from a gunshot wound to the chest that entered his body from the right side and exited on his left side.

{5}     Child, along with two other individuals, M.M. and A.C., were later arrested and charged with the robbery and killing of Victim.

**II.     Procedural Background**

{6}     On August 17, 2020, the State filed a delinquency petition against Child, alleging that he committed first degree felony murder for his involvement in the robbery and killing of Victim. On August 19, 2020, the district court ordered that

3

Child be detained pending further proceedings. The original date for Child's adjudicatory hearing was set for September 18, 2020.

{7}     On September 4, 2020, the State filed a motion to continue Child's adjudicatory hearing for sixty days. The State asserted that the lead investigator on the case, who would provide crucial testimony to the State's case, would be unavailable for the original setting. The State also cited a pending autopsy report and a social media warrant as additional reasons to continue the hearing. Child opposed the State's motion; however, the district court granted the motion to continue and rescheduled Child's adjudicatory hearing for October 16, 2020.

{8}     The State filed an amended delinquency petition on September 9, 2020, alleging Child committed five additional delinquent acts, including armed robbery, conspiracy to commit armed robbery, abuse of a child, and two counts of aggravated assault with a deadly weapon.

{9}     On September 29, 2020, the State filed a second motion to continue Child's adjudicatory hearing for thirty days, because the autopsy report from the New Mexico Office of the Medical Investigator (OMI), a material piece of the State's case, was still pending. Additionally, the State noted general societal delays caused by the COVID-19 pandemic as another reason to continue Child's hearing. The district court again granted the State's motion over the objection of Child and rescheduled the adjudicatory hearing for November 13, 2020.

**{10}** On November 2, 2020, the State filed its third motion to continue Child's adjudication for thirty days, explaining the COVID-19 pandemic "has caused [e]xceptional [c]ircumstances . . . out of the State's control" and requesting live testimony that was, at the time, restricted due to COVID-19 infection concerns. Child again opposed the motion; however, the district court granted the State's motion to continue citing "[e]xceptional [c]ircumstances caused by the current COVID-19 [p]andemic that would jeopardize the health of all parties involved," and extended the deadline to hold Child's adjudicatory hearing to December 13, 2020.

**{11}** On November 13, 2020, our Supreme Court issued Order No. 20-8500-039,[1] which suspended all in-person civil and criminal trials set to begin on or after November 16, 2020, until at least January 1, 2021. Consequently, the district court informed the parties via e-mail on November 24, 2020, that it had sua sponte vacated the December trial date. However, the district court did not enter an order extending the time limit to hold Child's adjudicatory hearing and the State did not file another motion asking the district court to do so. On November 29, 2020, Child filed a motion seeking release from detention based on the State's failure to bring him to an adjudicatory hearing within thirty days. The district court denied the motion following a hearing on December 10, 2020.

---

[1] *See* Supreme Court Order No. 20-8500-039 (Nov. 13, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Combined-Order-No_-20-8500-039-Amending-PHE-Protocols-Nos-1-2-and-3.pdf

**{12}** On January 3, 2021, Child filed a motion to dismiss the petition with prejudice. Child alleged that the State had failed to comply with the Children's Court rules of procedure and that "the failure to hold an adjudicatory hearing within the designated time limits required a dismissal with prejudice."[2] Specifically, Child argued that Rule 10-243(A) NMRA requires that an adjudicatory hearing be held within thirty days, and that any extensions of this deadline cannot, according to Rule 10-243(D), exceed ninety days absent a showing of exceptional circumstances. Child also asserted that under Rule 10-243(E), a motion to extend time limits must be filed no later than ten days after the deadline has passed, and the State failed to file such a motion before ten days after the December 13, 2020 deadline. The State opposed the motion, citing the Supreme Court's order suspending jury trials through January 2021, and the district court's e-mail sua sponte vacating Child's hearing, arguing that the e-mail removed the necessity for the State to file a motion to continue. In its response, the State also requested the court enter an order for an extension of time nunc pro tunc, to the date the adjudicatory hearing was vacated.

**{13}** The district court denied both of Child's motions. The court referenced Supreme Court Order No. 20-8500-039, noting it "imposed strict limitations on all in-person judicial proceedings" and suspended all jury trials until January 1, 2021.

---

[2]Child also filed a motion for immediate release at the same time as his motion to dismiss.

The court clarified that it vacated Child's adjudicatory hearing on November 23, 2020, "to comply with the Supreme Court order, as well as with the [s]tate public health order and the Judiciary's Emergency Court Protocols." The district court also noted that "[t]he delay in this case is entirely due to the public health emergency. These are exceptional circumstances that were out of the [c]ourt's and the State's control and that justif[ies] an extension of time beyond [ninety] days pursuant to Rule 10-243(D)." Last, the district court granted nunc pro tunc the extension of the deadline to hold Child's hearing from December 13, 2020 to February 26, 2021. Ultimately, Child's adjudicatory hearing was set for February 22, 2021.

### III. Adjudicatory Hearing

{14} Girlfriend provided further details regarding the night Victim was killed. She testified that while the two males were right outside the driver's side window, she was screaming that there was a baby in the vehicle. One of the young males was holding a small compact revolver and the other was holding what looked like a rifle. Girlfriend was unable to see the faces of the males on the driver's side of the car, but she was able to generally describe them. The male that was holding the rifle was "medium in weight," "medium complected," and was 5 feet 5 inches or 5 feet 6 inches in height. The male who was holding the handgun was described as "skinny," "medium tan," "probably the same height as the one on the passenger's side," and he had "dreadlocks." After two shots were fired at Victim, the first from the driver's

side and the second from the passenger's side, the three males waited a couple of seconds and then ran off.

{15}     Another witness, M.A., was at Frenger Park on the night of August 4, 2020. M.A. testified that she was sitting in her pickup truck when she saw two young males, one who was wearing a red hoodie, jump a fence near the park and pass "a long object" to one another before walking away. Approximately thirty minutes later, she saw a small vehicle pull up and park behind her, and the same two young males from earlier reappeared and approached the vehicle. After they reached the vehicle, it appeared that they were arguing with the occupants of the vehicle, and M.A. testified that it was then that one of the males pulled out a gun and pointed it at the driver. She saw the gun, drove off, and heard a gunshot.

{16}     E.M. testified that he and another friend, Y.C., drove M.M., A.C., and Child to Frenger Park "because they were going to do a drug trade." E.M. further testified that A.C. said something about them "hitting a lick" or committing robbery while at the park. After E.M. dropped the three males off at the park, he and Y.C. went and parked a few blocks away. A few minutes later Child came running to the vehicle in a panic and said, "Some shit went down" and "they shot someone." After all three males returned to the vehicle, E.M. drove them to another friend's, D.G.'s, house.

{17}     Y.C. also offered testimony recounting a similar story as E.M. She assumed that the three males were going to the park to buy "weed or Xanax" because "[t]hat

8

was what we were all mainly doing at the time." Y.C. confirmed that Child came running back to the car, panicking, and screaming, "He shot him."

{18}   D.G. confirmed that late on August 4, 2020, E.M., Y.C., M.M., A.C., and Child came to her house. She testified that, upon their arrival, they were all "freaked out" and she overheard one of them saying, "I think we hurt somebody." D.G. further testified that when they arrived, Child was wearing a dark hoodie, and A.C. was wearing a red and black sweater. She also testified that, at the time, Child had "curls or dreads or something, but he had blonde in his hair." That night, she saw M.M. with a gray handgun and A.C. with a black or brown shotgun.

{19}   E.M., Y.C., and D.G. all testified that they only had brief interactions with Child leading up to and following the night of August 4, 2020, when Victim was killed. However, all three witnesses identified Child in court during the hearing.

{20}   Detective Ricky Bardwell, the lead investigator on the case, testified that upon canvassing the area surrounding the crime scene, he located pills leading away from the vehicle. There were also pills and a pill bottle found in Victim's vehicle. Following his initial investigation at the crime scene, Detective Bardwell spoke to Girlfriend and learned that Victim was communicating with someone via Snapchat to coordinate the meeting at the park. Detective Bardwell then obtained photos of this person, later identified as M.M., from Victim's phone. Detective Bardwell used these photos to put out a news release, and he obtained tips from the public that led

9

him to M.M. and A.C. After speaking with M.M., E.M., and D.G., he was able to develop enough evidence to charge M.M., A.C., and Child in connection with the death of Victim. The State also presented photos of M.M., A.C., and Child taken during the course of Detective Bardwell's investigation that illustrated how the three males looked around the time of the killing. Detective Bardwell identified Child in the photos and described him as having "dreads" with dark roots and blonde highlighted tips that went down to his cheeks.

{21}	The jury found that Child committed felony murder, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994) and NMSA 1978, Section 32A-2-3 (2019), attempt to commit armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973), NMSA 1978, Section 30-28-1 (1963) and Section 32A-2-3, conspiracy to commit armed robbery, contrary to Section 30-16-2, NMSA 1978, Section 30-28-2 (1979) and Section 32A-2-3, child abuse, contrary to NMSA 1978, Section 30-6-1(D) (2009) and Section 32A-2-3, and aggravated assault by the use of a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963) and Section 32A-2-3. This appeal followed.

**DISCUSSION**

**I.	Timeliness of Child's Adjudicatory Hearing**

{22}	Child's first argument is that the State's failure to bring him to an adjudicatory hearing in a timely manner pursuant to Rule 10-243 requires his delinquency

adjudications to be vacated and remanded with instructions to dismiss the petition with prejudice. We are not persuaded.

**{23}** We review a district court's interpretation of rules of procedure de novo. *See State v. Stephen F.*, 2006-NMSC-030, ¶ 7, 140 N.M. 24, 139 P.3d 184 (applying de novo review to interpretation of children's court rules). However, Child's argument involves extensions of time under the rules, based on timeliness and exceptional circumstances. We review a district court's decision to deny or grant a continuance or extension under an abuse of discretion standard. *See State v. Anthony L.*, 2019-NMCA-003, ¶¶ 7, 16, 433 P.3d 347 (holding that the district court did not abuse its discretion in granting an extension to commence a child's adjudication under the Children's Code); *see also Vigil v. Fogerson*, 2006-NMCA-010, ¶¶ 54, 56, 138 N.M. 822, 126 P.3d 1186 (noting that we consider relief for exceptional circumstances to be equitable relief, which we review for an abuse of discretion). "An abuse of discretion occurs when the ruling is clearly untenable or not justified by reason." *State v. Alejandro M.*, 2021-NMCA-013, ¶ 5, 485 P.3d 787 (internal quotation marks and citation omitted). We conduct our review "in the light most favorable to the district court's decision." *Id.*

**{24}** Rule 10-243 provides, in pertinent part:

> A. Child in detention. If the child is in detention, the adjudicatory hearing shall be commenced within thirty (30) days from whichever of the following events occurs latest:

11

(1)     the date the petition is served on the child;

. . . .

D.     Extensions of time. For good cause shown, the time for commencement of an adjudicatory hearing may be extended by the children's court, provided that the aggregate of all extensions granted by the children's court shall not exceed ninety (90) days, except upon a showing of exceptional circumstances. An order granting an extension shall be in writing and shall state the reasons supporting the extension. An order extending time beyond the ninety (90)-day limit set forth in this paragraph shall not rely on circumstances that were used to support another extension.

E.     Procedure for extensions of time. The party seeking an extension of time shall file with the clerk of the children's court a motion for extension concisely stating the facts that support an extension of time to commence the adjudicatory hearing. The motion shall be filed within the applicable time limit prescribed by this rule, except that it may be filed within ten (10) days after the expiration of the applicable time limit if it is based on exceptional circumstances beyond the control of the parties or trial court which justify the failure to file the motion within the applicable time limit. . . .

F.     Effect of noncompliance with time limits.

. . . .

(2)     In the event the adjudicatory hearing of any person does not commence within the time limits provided in this rule, including any court-ordered extensions, the case shall be dismissed with prejudice.

{25}    Child first contends that the district court erred in granting the State's motions to continue because each continuance was based upon the same reason as prior extension request, in violation of Rule 10-243(D). Child next contends that the district court violated Rule 10-243(E) when it granted the fourth extension of time because it did not require the State to demonstrate exceptional circumstances even

12

though the extension resulted in the adjudicatory hearing being scheduled more than ninety days after the State filed its amended petition. Child also argues that the district court erred when it extended Child's hearing for the fourth and fifth times without the State filing a motion or requiring the State to show exceptional circumstances as required by Rule 10-243(D), (E). Child's fourth argument is that even if the district court considered the State's response to the Child's motion to dismiss as a request for an extension of time, it erred in granting this request because it was filed outside of the time limit for doing so under Rule 10-234(E). Finally, Child argues that the failure to bring him to an adjudicatory hearing in a timely manner should have resulted in a dismissal of his case as a matter of policy.

## A.    Circumstances Supporting the First Three Extensions

{26}    First, we address Child's argument that the first three extensions the district court granted the State were for the same reason, contrary to Rule 10-243(D). Upon our review of the motions in the record, this is inaccurate. The State's first motion was based upon the unavailability of Detective Bardwell, who would provide testimony necessary for the State's case. The motion also noted that the autopsy report and a social media warrant were both pending. The district court was well within its discretion to grant this motion. *See State v. Pruett*, 1984-NMSC-021, ¶ 8, 100 N.M. 686, 675 P.2d 418 ("The grant or denial of a motion for continuance based on absence of evidence rests in the sound discretion of the [district] court."); *see also*

13

*State v. Doe*, 1977-NMCA-065, ¶¶ 6-11, 90 N.M. 568, 566 P.2d 117 (holding that the absence of a witness, in part, was good cause for the continuance of a child's hearing).[3]

{27} In support of its second motion to continue, the State noted that the autopsy was still pending and would not be available for another ninety days, according to OMI. The State also acknowledged that the COVID-19 pandemic was causing "delays in every aspect of our society." The reasoning in the second motion to continue, although similar, was not the same as the State's first motion. Again, the district court did not abuse its discretion in granting this motion. *See Pruett*, 1984-NMSC-021, ¶ 8.

{28} Finally, the district court granted the State's third motion that noted exceptional circumstances created by the COVID-19 pandemic, the increasing COVID-19 cases in Doña Ana County at the time, and the State's request for live testimony. The State argued that it would "be at a disadvantage if it were to proceed to trial without live testimony," but also acknowledged the potential risks posed by the COVID-19 pandemic that would "jeopardize the health of all parties involved"

---

[3] The State's first motion to continue was filed prior to the filing of the amended petition, on September 9, 2020. The rule triggering the time to commence the adjudication, Rule 10-243(A)(1), may not require the amendment of the petition to be considered in the analysis when determining whether the time limits for adjudicatory hearings were followed; however, we have included it for a full understanding of what occurred below.

14

if the court proceeded without a continuance. Rule 10-243(D) states that "the aggregate of all extensions granted by the children's court shall not exceed ninety (90) days, except upon a showing of exceptional circumstances."[4] The third extension was not entirely the same as the other two motions as Child suggests. The first motion relied on missing witnesses and evidence, the second motion explained that the COVID-19 pandemic was generally causing delays, and the third motion argued that live witness testimony was not feasible because of COVID-19 restrictions and risks. Moreover, this Court recently held that "the COVID-19 pandemic and the resulting precautionary measures were exceptional circumstances warranting an extension of time." *Alejandro M.*, 2021-NMCA-013, ¶ 9; *see also id.* ¶ 8 ("COVID-19 is a rapidly evolving public health crisis of an extraordinary magnitude."). The same holds true here. Because the State showed different reasons and exceptional circumstances for the third continuance of Child's adjudicatory hearing, it met Rule 10-243(D)'s requirements and the district court, therefore, did not abuse its discretion in granting this motion.

**B.     The Nunc Pro Tunc Fourth Extension**

{29}     Next, we address the entry of the extension of time nunc pro tunc. Supreme Court Order No. 20-8500-039,[5] dated November 13, 2020, suspended jury trials

---

[4]We do not determine whether Rule 10-243 only requires extensions that are beyond the ninety-day limit set forth in section (D) be on new grounds.

[5]*See* Supreme Court Order No. 20-8500-039, *supra* note 1.

until January 1, 2021. Because the district court sua sponte vacated Child's adjudicatory hearing based on our Supreme Court's Order No. 20-8500-039, the State did not need to file an additional motion for continuance under Rule 10-243(E) and show exceptional circumstances. Nevertheless, the State, in its response to Child's motion to dismiss, requested that the district court enter a fourth order to continue nunc pro tunc dated for the day the adjudicatory hearing was vacated.

{30}    On January 13, 2021, the district court entered and granted the State's final, albeit unrequired, motion to continue nunc pro tunc. Child argues that the final request to continue in the State's response to Child's motion dismiss, was not filed within ten days of the expiration of the ninety-day time-to-adjudication period as set forth by Rule 10-243(E). However, because the district court entered the motion nunc pro tunc and dated it for November 24, 2020, the date Child's hearing was vacated, this argument also fails. *See State v. Reyes-Arreola*, 1999-NMCA-086, ¶ 17, 127 N.M. 528, 984 P.2d 775 ("A nunc pro tunc order has reference to making of an entry now, of something which was actually previously done, so as to have it effective as of the earlier date." (internal quotation marks and citation omitted)). This date, November 24, 2020, was within the time confines required by Rule 10-243(E), and thus, the filing cannot be considered to be in violation of the rule.

**C.    Exceptional Circumstances for the Fourth and Fifth Extensions of Time Limits**

16

**{31}** Child's argument that the fourth extension (after Supreme Court Order No. 20-8500-039) and the fifth and final extension (after Child's motion to dismiss) were done in error because the State did not show exceptional circumstances fails because the COVID-19 pandemic and the resulting precautionary measures have already been determined to be exceptional circumstances. *See Alejandro M.*, 2021-NMCA-013, ¶ 9. This fact is bolstered by the record, which reflects that the State demonstrated such circumstances by articulating that the COVID-19 pandemic was a necessary reason for a continuance and included an exhibit of our Supreme Court's Order suspending jury trials until the beginning of 2021. *See Anthony L.*, 2019-NMCA-003, ¶ 16 ("Because there was good cause in the record, although not memorialized in the district court's order granting the extension of time limits, we hold that the district court did not abuse its discretion in granting the [s]tate's motion for extension of time in which to commence [the c]hild's adjudication."). Therefore, because there was no violation of Rule 10-243, we hold that the district court did not abuse its discretion in extending Child's hearing for the fourth or fifth and final time.

**{32}** The delays in Child's adjudicatory hearing were unfortunate, but unavoidable. However, they cannot be attributed to error on the part of the State or the district court. *See* Rule 10-243(E). The COVID-19 pandemic has disrupted all facets of life, and although there are important policy considerations to protect children's liberty interests by bringing them to adjudication as soon as possible, the pandemic has

17

created exceptional circumstances and delays far beyond the control of the judiciary. For these reasons, we conclude the district court did not abuse its discretion in granting any of the extensions of Child's adjudicatory hearing.

## II. In-Court Identification Procedures

{33} The State asked three witnesses at Child's adjudication hearing to identify Child as follows:

> "Your Honor, I would like to ask [E.M.] if he can identify [A.M.]. But I would like to ask if [A.M.] could take off his mask for the purpose of identification so he can see his face."
>
> . . . .
>
> "Your Honor, I would like to ask [Y.C.] if she could identify [A.M.]. Could I please ask [A.M.] to remove his mask just long enough for her to see if she identifies him or not? . . . So please look at this young man. Can you tell is this [A.M.] or not?"
>
> . . . .
>
> "Your Honor, I would like to ask if [D.G.] could identify [A.M.]. I would like to ask if [A.M.] could briefly remove his mask to see if she can identify him . . . Please look at this young man here and tell us if this is [A.M.]."

{34} At the time of Child's adjudicatory hearing, a Supreme Court Order No. 21-8500-003[6] was in place due to the COVID-19 pandemic that required everyone present to wear a mask and limited the number of individuals in the courtroom. The

___

[6] *See* Supreme Court Order No. 21-8500-003 (Feb. 12, 2021), https://www.nmcourts.gov/wp-content/uploads/2021/02/Order-No.-21-8500-003-Amending-PHE-Protocol-No.1-2-12-21-Combined.pdf.

individuals present during the hearing included the judge, court personnel, jurors, the witness, counsel, and Child. Child did not object to the State's identification procedures, the district court permitted Child to briefly remove his mask each time, and, subsequently, the three witnesses positively identified Child.

{35} Child argues that these in-court identifications were unnecessarily suggestive and violated his due process rights under both the United States and New Mexico constitutions, and urges us to extend the recent standard set forth in *State v. Martinez*, 2021-NMSC-002, 478 P.3d 880, for unnecessarily suggestive out-of-court identification procedures to in-court identification procedures. We agree with Child that his due process rights were violated under the United States Constitution; however, as we explain, we decline to extend the new standard set forth in *Martinez* to the facts of this case.

## A. Standard of Review

{36} The admission of identification evidence implicates a child's right to due process. *State v. Ramirez*, 2018-NMSC-003, ¶ 29, 409 P.3d 902. Appellate courts review questions of suppression bearing on "important constitutional rights" de novo. *State v. Belanger*, 2009-NMSC-025, ¶ 8, 146 N.M. 357, 210 P.3d 783 (internal quotation marks and citation omitted); *see also id.* ("This appeal implicates . . . the Fourteenth Amendment right to due process of law, including the right to a fair trial, and therefore our review is de novo.").

19

{37}    However, Child did not object to the State's in-court identification procedures at his adjudicatory hearing. As a result, the parties agree we should review this issue for plain error. Plain error review applies "to errors that affect substantial rights of the accused and only applies to evidentiary matters." *State v. Dartez*, 1998-NMCA-009, ¶ 21, 124 N.M 455, 952 P.2d 450. Otherwise, the rule of fundamental error applies. *Id.* To hold that either kind of error occurred, we "must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *Id.* ¶ 22 (internal quotation marks and citation omitted). "Further, in determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (alteration, omission, internal quotation marks, and citation omitted).

B.    **The *Manson* and *Martinez* Standards Regarding Witness Identifications**

{38}    Because this appeal involves the interplay between the due process protections afforded by United States and New Mexico Constitutions and the different types of identification procedures, we first offer a brief explanation of the legal principles in play. In *Manson v. Brathwaite*, 432 U.S. 98 (1977), the Supreme Court of the United States set forth the federal due process standard for the admissibility of pretrial eyewitness identifications. *Id.* at 99. Recently, in *Martinez*, our Supreme Court rejected the *Manson* identification standard for the purposes of

20

the due process protections under the New Mexico Constitution. *Martinez*, 2021-NMSC-002, ¶ 3. The question in this case, however, involves the procedure used for an in-court identification of Child, and not out-of-court, "police-arranged identification procedures." *Id.*

{39} The State argues that "an in-court identification, which is independent of, and not tainted by the extra-judicial identification is admissible." *State v. Clark*, 1986-NMCA-058, ¶ 40, 104 N.M. 434, 722 P.2d 685; *see State v. Stampley*, 1999-NMSC-027, ¶¶ 31-32, 127 N.M. 426, 982 P.2d 477. We agree with Child that in these cases, the issue was whether an in-court identification was tainted by a pretrial identification, exposure to pre-identification media, or the reality that the defendant was the only Black man in the room during the in-court identification. *See Stampley*, 1999-NMSC-027, ¶ 30; *Clark*, 1986-NMCA-058, ¶ 45. Those Courts did not address whether a procedure used by the prosecutor, and permitted by the district court, to obtain the in-court identifications were impermissibly suggestive.

{40} Our Supreme Court has applied the *Manson* principles to determine whether in-court identification procedures violate due process under the Fourteenth Amendment. *See Ramirez*, 2018-NMSC-003, ¶¶ 30-31. In *Ramirez*, the defendant argued that media reports tainted in-court identifications and that his placement at the defense table, his ethnicity, and his gender were overly suggestive. *Id.* ¶ 28. The Court first observed that its "treatment of the issue presented by [the defendant] is

21

guided by *Perry v. New Hampshire*, 565 U.S. 228 (2012)." *See Ramirez*, 2018-NMSC-003, ¶ 30. After considering the circumstances of *Perry*, the *Ramirez* Court observed that *Perry* applied *Manson* "to determine whether due process requires suppression of eyewitness identification." *Ramirez*, 2018-NMSC-003, ¶¶ 30-31. Under this analysis, the *Ramirez* Court rejected the defendant's arguments because (1) only law enforcement procedures—and not media or the common arrangement of a courtroom—could be the source of unconstitutional tainted identifications; and (2) other constitutional safeguards protected the defendant from "any fundamental unfairness resulting from eyewitness identifications." *Id.* ¶¶ 33-36.

{41}    Because this case involves only a challenge to in-court identification, and not an argument that out-of-court identification procedures tainted an in-court identification, we first follow the approach set forth in *Ramirez* to evaluate whether the in-court identification violated federal due process protections before turning to Child's assertion that the state Constitution provides additional protections under *Martinez*.

## C.    The Fourteenth Amendment—*Manson* Standard

{42}    Child contends that the procedures used by the State to obtain the in-court identifications were suggestive and resulted in a high likelihood of irreparable misidentification because "the procedures gave the witness only one result—to identify Child[] who was already identified by the State." Child further asserts that

22

because the procedures used gave the witnesses only one possibility to choose from, and because the State "used procedures that rigged the system to indicate to the witness that it wanted the witness to identify Child[], the risk of misidentification was high." He maintains that because it was established that each witness had limited or brief interactions with Child prior to his adjudicatory hearing and the in-court identification procedure used was "rigged," these identifications cannot be considered reliable. We agree.

{43}   *Ramirez* and *Manson* set forth an approach to take in deciding if due process requires suppression of eyewitness identifications. *Ramirez*, 2018-NMSC-003, ¶ 31. The *Manson* test requires appellate courts to analyze "whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and whether, under the totality of the circumstances, the identification was still reliable." *Martinez*, 2021-NMSC-002, ¶ 28 (internal quotation marks and citation omitted). As we noted, in *Ramirez*, our Supreme Court rejected the defendant's due process argument because law enforcement did not taint the procedures and because other due process protections ameliorated any suggestive procedures that occurred in the courtroom. 2018-NMSC-003, ¶¶ 33-36. Applying those principles, a different outcome than in *Ramirez* is required in the present case.

{44}   We agree with Child that the in-court identifications were unreliable, tainted by the State's suggestiveness while eliciting the identifications and other due process

23

protections did not provide an opportunity for Child to counteract the taint, and resulted in a violation of his due process rights under the Fourteenth Amendment. We hold that under the circumstances of this case, as set forth below, the State's acts triggered a due process concern when eyewitness evidence was procured in-court under unnecessarily suggestive circumstances. *See Martinez*, 2021-NMSC-002, ¶ 28 (considering under the federal standard, "whether, under the totality of the circumstances, the [in-court] identification[s were] . . . reliable" (internal quotation marks and citation omitted)); *cf. Ramirez*, 2018-NMSC-003, ¶¶ 33-36. Considering the identifications in the context of the testimony as a whole, we hold that it was plain error to admit the identifications.

{45} First, the State used Child's name while asking each witness to identify him. Second, the State asked two of the witnesses to "please look at this young man," instead of asking the witnesses if they saw Child in the courtroom. Finally, the State singled Child out by asking him to remove his mask, which is comparable to asking Child to identify himself by raising his hand or turning around. No amount of cross-examination would lessen the impact of having the prosecutor, for three witnesses in succession, identify Child by name, ask that he remove his mask on command to be the only unmasked person in the room, and have each witness confirm that Child was A.M. *See Ramirez*, 2018-NMSC-003, ¶ 36 (describing other constitutional safeguards to prevent against unfairness). The State suggested exactly who it wanted

24

the witnesses to identify and did not allow the witnesses to identify Child on their recollection. Under the totality of circumstances, the procedures used by the State rendered the in-court identifications highly suggestive, and consequently, unreliable. Because the prosecutor used unnecessarily suggestive procedures to elicit the in-court identifications of Child, the district court erred in admitting the three identifications. We therefore turn to the next step of plain error analysis, whether the "admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citation omitted).

{46} Identity was a central issue in this case. It was undisputed that M.M. killed Victim. However, the two eyewitnesses to the crime testified that they did not get a clear look at the other two males who also pointed guns at Victim, and none of the eyewitnesses to the crime identified Child. E.M. and Y.C. are the only witnesses to put Child at the park that night. No other evidence connected Child specifically to the crimes. Furthermore, the three witnesses that identified Child in court—and particularly E.M. and Y.C.—only had brief interactions him prior to the adjudicatory hearing. In light of the witnesses' testimonies as a whole, the State's actions tending to suggest the identification of Child for these witnesses in court "constituted an injustice" that creates doubts about the validity of the verdict and violated his right to due process. *Id.* Therefore, we reverse and remand for a new adjudicatory hearing.

**D.     The New Mexico Constitution——*Martinez* Standard**

{47}     Child next urges us to extend our Supreme Court's per se exclusionary rule for unnecessarily suggestive out-of-court identifications articulated in *Martinez* to unnecessarily suggestive in-court identification procedures. We decline to do so.

{48}     The first reason we decline to apply the newly adopted per se exclusionary rule is because *Martinez* is silent with regard to in-court identification procedures and only "overrule[d] prior cases to the extent that they apply the *Manson* reliability standard to determine whether unnecessarily suggestive, police-arranged, pretrial identifications are nonetheless admissible." *Martinez*, 2021-NMSC-002, ¶ 72; *see State v. Sanchez*, 2015-NMSC-018, ¶ 26, 350 P.3d 1169 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{49}     Second, we decline to apply *Martinez*, which would analyze whether these in-court identifications violated due process under the New Mexico Constitution, because we have already held error under the federal constitution. *See State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 ("Under the interstitial approach, the [C]ourt asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached."). As such, we decline to consider extending the *Martinez* per se exclusionary rule to in-court identification procedures in this instance.

26

## III.    Hearsay

{50}    Child also argues that the district court abused its discretion by allowing testimony regarding rumors that M.M., A.C., and Child planned to engage in a drug deal and rob Victim. Because we are reversing and remanding on other grounds, we need not address Child's hearsay argument; however, we exercise our discretion to do so to provide guidance to the district court as this question is likely to recur on remand. *See State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 37, 136 N.M. 309, 98 P.3d 699 (providing guidance on issues unnecessary to the resolution of the case but that may "arise[] again on remand"). Specifically, Child challenges the admission of E.M.'s testimony regarding (1) why he drove Child and the other two young males to the park, and (2) their plan to commit a robbery. We disagree and explain.

{51}    "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted); *see also State v. Kincheloe*, 1974-NMCA-126, ¶ 9, 87 N.M.

27

34, 528 P.2d 893 ("In order to establish an abuse of discretion, it must appear that the [district] court acted unfairly, arbitrarily or committed manifest error.").

{52} Upon our review of the record, we conclude that the district court did not err in admitting E.M.'s testimony. Child's argument that E.M. should not have been allowed to testify regarding the reason why he was driving Child and the others to the park fails because this testimony is not hearsay. Rule 11-801(C) NMRA defines hearsay as "a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." E.M. did not answer the State's inquiry with an out-of-court statement offered for the truth of the matter asserted and thus, could not have violated the rule against hearsay. We decline to address Child's second argument that E.M. should not have been allowed to testify about the plan to commit robbery because it was unpreserved. *See State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)). Because we conclude the district court did not admit inadmissible hearsay and Child's second argument was unpreserved, we hold that the district court did not abuse its discretion by admitting the testimony at issue.

## IV.    Sufficiency of the Evidence

**{53}** Because we reverse on Fourteenth Amendment grounds, we must address Child's contention that insufficient evidence was presented to support his delinquency adjudications so as to avoid double jeopardy concerns on remand if Child is retried. *See State v. Consaul*, 2014-NMSC-030, ¶ 41, 332 P.3d 850 ("To avoid any double jeopardy concerns, we review the evidence presented at the first trial to determine whether it was sufficient to warrant a second trial."); *State v. Gonzales*, 2020-NMCA-022, ¶ 22, 461 P.3d 920 (same). Child argues that absent the improper, suggestive in-court identifications and hearsay statements about the drug deal and robbery, there is not sufficient evidence to support any of his five delinquency adjudications. We disagree.

**{54}** The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a finding that the child committed the act beyond a reasonable doubt with respect to every element essential to a delinquency adjudication. *See Montoya*, 2015-NMSC-010, ¶ 52. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in

29

favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{55}    Our review of the record shows that Child's adjudication as a delinquent was supported by substantial evidence. Child argues that absent the in-court identifications of him and testimony regarding why M.M., A.C., and Child were dropped off at the park, i.e., to engage in a drug deal and commit robbery, there was not sufficient evidence to show that Child planned and attempted to rob Victim, was present when Victim was killed, or pointed a gun at Victim. However, Child's argument is flawed because when considering sufficiency of the evidence, reviewing courts consider all evidence, even improperly admitted evidence. *See State v. O'Kelley*, 1994-NMCA-033, ¶ 16, 118 N.M. 52, 878 P.2d 1001 ("The correct rule is that when determining whether retrial is barred because there was insufficient evidence of guilt at the trial from which the appeal is taken, the appellate court considers all of the evidence admitted, even that evidence which it holds was admitted improperly.").

{56}    Upon consideration of the evidence presented by the State, including the in-court identifications and the testimony regarding why the three young males were dropped off at the park, Child has not persuaded us that the evidence was insufficient to support his delinquency adjudications. Therefore, here, there are no double jeopardy concerns. *See Consaul*, 2014-NMSC-030, ¶ 41. On remand, adjudication

30

proceedings on these charges are not precluded. *See State v. Lizzol*, 2007-NMSC-024, ¶ 15, 141 N.M. 705, 160 P.3d 886 (stating that "a defendant may be retried if the conviction was set aside because of trial error, including the situation when the trial court wrongly admitted incriminating evidence or wrongly excluded exculpatory evidence").

## V.    Cumulative Error

{57}    Lastly, Child argues that the errors raised on appeal constitute cumulative error sufficient to overturn his delinquency adjudications. Child relies on *State v. Baca*, which states, "Under the doctrine of cumulative error, [appellate courts] must reverse a conviction when the cumulative impact of the errors that occurred at trial was so prejudicial that the defendant was deprived of a fair trial." 1995-NMSC-045, ¶ 39, 120 N.M. 383, 902 P.2d 65 (alteration, internal quotation marks, and citation omitted). However, because we have already held reversible error, Child's delinquency adjudications have been vacated, and this case is being remanded for a new adjudicatory hearing, we need not address this issue. *See State v. French*, 2021-NMCA-052, ¶ 13 n.3, 495 P.3d 1198 ("[A]ppellate courts need not address questions unnecessary for the resolution of the case."). Thus, we proceed no further on the question of cumulative error.

## CONCLUSION

{58} We reverse Child's delinquency adjudications and remand for a new adjudicatory hearing.

{59} **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**KATHERINE A. WRAY, Judge**